UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

KILLIAN MOHR,

                                         Plaintiff,

        -against-

THE CITY OF NEW YORK; THE NEW YORK CITY
POLICE DEPARTMENT; NEW YORK CITY POLICE
OFFICER CHRISTOP LABETTE, and NEW YORK
CITY POLICE OFFICER SHERIF BAKSH, individually
and in their official capacities,

                                          Defendants.

**DEFENDANT'S STATEMENT PURSUANT TO LOCAL RULE 56.1**

12 CV 0163 (LGS) (GWG)

------------------------------------------------------------------------ x

        Defendants City of New York, Christopher Labate and Sherif Baksh, submit this statement pursuant to Local Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, to set forth the material facts as to which they contend there is no genuine issue to be tried:

1. Plaintiff Killian Mohr commenced this action on or about January 9, 2012 against the City of New York, New York City Police Department, Christopher Labate and Sherif Baksh. (See Court Docket Sheet, annexed to the Declaration of Joshua J. Lax in Support of Defendant's Motion for Summary Judgment (hereinafter "Lax Decl.") as Exhibit "A" ("Ex. A"), at Docket Entry No. 1).

2. The Complaint alleges, inter alia, claims for false arrest and malicious prosecution stemming from plaintiff's arrest on March 4, 2009 for Possession of a Controlled Substance in the Third Degree. (See Complaint, annexed to Lax Decl. as Exhibit "B").

3. Defendants City of New York and New York City Police Department submitted an Answer to the Complaint on or about April 26, 2012. (Ex. A at Docket Entry No. 4).

4. Defendants Christopher Labate and Sherif Baksh submitted an Answer to the Complaint on or about May 15, 2012. (Ex. A at Docket Entry No. 7).

5. Plaintiff was arrested on March 4, 2009 by officers from the New York City Police Department. (Complaint at ¶ 12; Online Arrest Report, dated January 15, 2009, annexed to the Lax Decl. as Exhibit "C" ("Ex. C"); Criminal Court Complaint, Docket Number, 2009NY017509, Dated March 4, 2009, annexed to the Lax Decl. as Exhibit "D" ("Ex. D"); Deposition of Killian Mohr ("K. Mohr Dep."), annexed to the Lax Decl. as Exhibit "E," at page 70:9 to 14, 84:1 to 83.)

6. Prior to his arrest, plaintiff entered an apartment building located at the intersection of 180th Street and Cabrini Boulevard to visit an individual named "Omar." (K. Mohr Dep. at 96:18 to 97:2; Deposition of Laura Mohr ("L. Mohr Dep."), annexed to the Lax Decl. as Exhibit "E," at 80:25 to 81:1).

7. Plaintiff went to Omar's apartment building to pick up a set of papers he left in Omar's car. (K. Mohr Dep. at 97:12 to 17).

8. When plaintiff arrived at Omar's building, plaintiff used a buzzer to alert Omar that plaintiff had arrived. (K. Mohr Dep. at 97:21 to 23).

9. Omar came down to meet plaintiff in the lobby of the apartment building. (K. Mohr Dep. at 98:11 to 13, 99:19 to 20).

10. When Omar met plaintiff in the lobby, the two stood facing each other and the right side of plaintiff's body could be seen from the front door entrance to the lobby from the street. (K. Mohr Dep. 100:5 to 19).

11. When Omar greeted plaintiff, plaintiff gave Omar a handshake or "five." (K. Mohr Dep. at 98:15 to 16).

12. Plaintiff's handshake with Omar consists of the following steps: first plaintiff and Omar's hands closed around one another and their thumbs gripped each other's hand; next, they opened their hands and grasp each other's fingers while making the thumb erect and point forefinger at the other person. (K. Mohr Dep. at 103:19 to 104:20).

13. Omar did not bring the item plaintiff came to pick up, and gave plaintiff no set of papers or book in the lobby. (K. Mohr Dep. at 102:17 to 22).

14. The lobby is small, approximately ten by fifteen feet. (K. Mohr Dep. at 99:11 to 18, 102:1 to 2).

15. A person standing at the front door of the apartment building could see plaintiff interacting with Omar. (K. Mohr Dep. at 103:2 to 14).

16. The entrance to the lobby from the street includes two doors exactly alike consisting of a metal sheet on the bottom half a glass window on the top half with a metal frame, with glass panels on either side of each door. (K. Mohr Dep. at 106:21 to 107:11, 107:21 to 108:5).

17. In particular, plaintiff and Omar were standing in a way that would allow a person to see plaintiff and Omar shake hands through the front door of the apartment building. (K. Mohr Dep. at 103:2 to 14).

18. When Omar started ascending the stairs plaintiff saw a black male attempting to enter the lobby through the second inner-door at the front entrance. (K. Mohr Dep. at 98:17 to 19, 104:21 to 24, 107:12 to 107:18,

19. The individual at the door was wearing a black hooded sweatshirt and had a gun in a holster. (K. Mohr Dep. 98:22, 108:8 to 18).

20. The gun was in this man's holster, and the man placed his hand on the gun. (K. Mohr Dep. at 108:8 to 18).

21. Plaintiff looked at this individual for a second or two seconds. (K. Mohr Dep. at 111:2 to 7).

22. After seeing the man, plaintiff exited the lobby through a door at the back of the lobby that led to a outdoor area where garbage is collected which plaintiff referred to as a basement. (K. Mohr Dep. at 105:2 to 6, 111:11 to 112:3).

23. When plaintiff existed the building, he went down set of steps, and proceeded to the right where he encountered two more individuals near a gate through which plaintiff planned to exit the back area of the building. (K. Mohr Dep. at 112:15 to 114:7, 115:19 to 116:4).

24. The two individuals looked like they were trying to get through a gate that plaintiff believes is always locked. (K. Mohr Dep. at 123:20 to 124:18)

25. Plaintiff believed that these individuals were after him. (K. Mohr Dep. at 123:20 to 25).

26. Plaintiff ran in the opposite direction from the gate. (K. Mohr Dep. at 124:19 to 20).

27. Plaintiff jumped over two or three gates while running through back alleyways. (K. Mohr Dep. at 124:21 to 125:16).

28. Plaintiff emerged onto Cabrini Boulevard. (K. Mohr Dep. at 125:17 to 19).

29. When plaintiff stepped out of the alleyway onto Cabrini Boulevard, plaintiff saw another individual in street clothing. (K. Mohr Dep. at 126:4 to 127:9).

30. Upon seeing this individual plaintiff performed a "juke": plaintiff faked that he was going to run towards 180th Street and Cabrini Boulevard, and quickly reversed direction to run to 181st Street and Cabrini Boulevard. (K. Mohr Dep. at 126:15 to 16, 127:10 to 21).

31. At that point plaintiff kept running up Cabrini Boulevard. (K. Mohr Dep. at 127:22 to 24).

32. Plaintiff stopped running approximately one block south of 187th Street on Cabrini Boulevard because he was too tired to stop running and when he stopped running he knew he was already caught. (K. Mohr Dep. at 128:9 to 25, 129:5 to 13).

33. Plaintiff ran throughout his entrie route from Omar's apartment building to the point he came to rest on Cabrini Boulevard. (K. Mohr Dep. at 104:21 to 105:15, L. Mohr Dep. at 81:16 to 22).

34. Plaintiff was subsequently handcuffed by police officers. (K. Mohr Dep. at 134:15, 135:17 to 18).

35. Police officers appeared to be searching the street in the area plaintiff stopped running, and plaintiff was asked where he dropped a gun. (K. Mohr Dep. at 147:22 to 148:3).

36. After being handcuffed officers stood up and did a quick search to see if he had anything which resulted in the recovery of the bag of creatine. (K. Mohr Dep. at 149:11 to 13, 149:25 to 150:6).

37. The creatine was in a plastic bag that was knotted at the top. (K. Mohr Dep. at 80:4 to 15, 152:1 to 7; Deposition of Sherif Baksh ("Baksh Dep.") at 32:19 to 32:22, annexed to the Lax Decl. as Exhibit "E,").

38. The plastic bag plaintiff had put the creatine in had previously held fruit. (K. Mohr Dep. at 79:25 to 80:3).

39. The creatine is a white powder with purple specs the size of grains. (K. Mohr Dep. at 152:11 to 18).

40. Plaintiff does not know if the purple grains were visible at the time police officers recovered the creatine from him. (K. Mohr Dep. at 153:4 to 8).

41. The police recovered an amount of money from plaintiff at the time of his arrest. (K. Mohr Dep. at 153:23 to 154:2, Property Clerk's Invoice, Number P496410, dated March 4, 2009, annexed to the Lax Decl. as Exhibit "F" ("Ex. F"); Baksh Dep. at 24:20 to 25:2).

42. At least some of the money came out of plaintiff's pocket and fell on the floor. (K. Mohr Dep. at 154:3 to 11, 154:19 to 155:14, 159:17 to 23; Baksh Dep. at 14:1 to 15:23).

43. At the time of his arrest plaintiff possessed approximately $3,084.00 in cash. (K. Mohr Dep. at 89:22 to 90:1, 93:16, 94:10 to 14; Ex. F).

44. This cash was in the following denominations: three one-hundred dollar bills, eighteen fifty-dollar bills, 115 twenty dollar bills, three ten-dollar bills, and four one-dollar bills. (Ex. F; K. Mohr Dep. at 90:6 to 16, 91:3 to 8).

45. This money was returned to plaintiff at the conclusion of his criminal case. (K. Mohr Dep. at 93:23 to 94:5).

46. Plaintiff was arraigned in the New York County branch of the Criminal Court of the City of New York on March 4, 2009 on one . (See APS DA Sheet, dated March 4, 2009, annexed to the Lax Decl. as Exhibit "G" ("Ex. G"); Transcript of Arraignment, People v. Killian Mohr, Docket No. 2009NY017509, March 4, 2009 ("Arraignment"), annexed to the Lax Decl. as Exhibit "E.").

47. The assistant district attorney informed the Court that plaintiff was arrested after Police Officer Labate observed plaintiff and an unapprehended individual conduct what appeared to be a hand-to-hand sale of drugs. (Arraignment at 7:8 to 14).

48. At arraignment, plaintiff's attorney argued that plaintiff should be released on his own recognizance because the money recovered from plaintiff was possessed by him for legitimate reasons. (Arraignment at 5:16 to 6:14, 8:11 to 23, 9:15 to 18).

49. Plaintiff's counsel also told the Court that the suspected controlled substance possessed by plaintiff was creatine. (Arraignment at 4:5 to 8, 4:11 to 12, 4:14 to 16, 5:3 to 8, 9:22 to 23).

50. The Assistant District Attorney acknowledged there was no field test performed after plaintiff's arrest. (Arraignment at 5:10 to 12, 6:23 to 24).

51. Despite plaintiff's counsel's arguments, the arraigning judge set a bail of $3,000 bond, $2,000 cash, with a seventy-two hour surety. (Arraignment at 10:20 to 21; Ex. G).

52. The white powdery substance plaintiff possessed weighed a total of ninety grams plus 332 milligrams, or approximately 3.18 ounces. (See Police Laboratory Controlled Substance Analysis Report, dated March 5, 2009, annexed to the Lax Decl. as Exhibit "H" ("Ex. H")).

Dated: June 10, 2013
      New York, New York

    MICHAEL A. CARDOZO
    Corporation Counsel of the
    City of New York
    *Attorney for Defendants City of New York, Labate and Baksh*
    100 Church Street, Room 3-154
    New York, New York 10007
    (212) 356-3538

By: _/s/ Joshua J. Lax_
    Joshua J. Lax
    Assistant Corporation Counsel

TO: BY ECF AND HAND DELVERY
    Andres M. Aranda, Esq.
    930 Grand Concourse, Suite 1A
    Bronx, New York 10451