UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

KILLIAN MOHR,

                         Plaintiff,

             -against-

CITY OF NEW YORK, et al,

                    Defendants.

---------------------------------------------------------- X

12 Civ. 00163 (LGS)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _11/12/2013_

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Killian Mohr brings this action pursuant to 42 U.S.C. § 1983 against defendants

Christopher Labate ("Officer Labate"), Sherif Baksh ("Officer Baksh"), City of New York and

New York City Police Department ("NYPD") (collectively "Defendants") for violations of his

rights under the Fourth and Fourteenth Amendments.  Defendants move for summary judgment

on Plaintiff's false arrest, malicious prosecution and state law claims, to the extent that they are

asserted.[1]  For the reasons below, Defendants' motion is granted in part and denied in part.

I.     **Background**

     **A.  Procedural Background**

      Defendants timely filed their motion for summary judgment on June 10, 2013.  Plaintiff,

through counsel, failed to file his opposition by the June 24, 2013, due date.  On June 27, 2013,

the Court ordered Plaintiff to submit opposition papers no later than July 3, 2013, warning that if

Plaintiff failed to comply, the Court would decide the motion on the record before the Court.  On

---

[1] In addition, although not addressed in Defendants' motion, Plaintiff also arguably asserts a claim for excessive force under the Fourth Amendment.  In his complaint, Plaintiff alleges that, at the time of his arrest, he was "thrown to the ground, punched and kicked," and that Defendants "unfairly, unjustly, and mercilessly beat him up." These allegations are sufficient to put Defendants on notice of Plaintiff's excessive force claim pursuant to Federal Rule of Civil Procedure 8(a).  *See Sullivan v. Andino*, No. 09 Civ. 3668, 2012 WL 4714766, at *5 n. 2 (S.D.N.Y. Sept. 18, 2012) (finding that plaintiff's complaint adequately put defendants on notice of his excessive force claim even though the words "excessive force" were not used).

July 1, 2013, Plaintiff sent a copy of his opposition and supporting documents to Chambers, but did not file his papers on ECF until July 11, 2013, with assistance of Chambers.

In addition to being untimely, Plaintiff's opposition is incomplete:  Plaintiff failed to oppose Defendants' Local Rule 56.1 statement of undisputed material facts as required by Local Rules of the United States District Court for the Southern and Eastern Districts of New York. Local Rule 56.1(b) and (d) require the non-moving party to submit a statement in opposition to the moving party's 56.1 Statement "responding to each numbered paragraph in the statement of the moving party" and citing to admissible evidence in the record.  Unless specifically controverted, the statements of fact in the moving party's 56.1 statement are generally deemed admitted.  *See* Local Rule 56.1(c).

Non-compliance with the Local Rules may be excused "in the interest of justice."  *Wight v. BankAmerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000).  "While a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Id.*; *cf. Hollingsworth v. City of New York*, No. 95 Civ. 3738, 1997 WL 91286, at *3 (S.D.N.Y. Mar. 4, 1997) (noting that it is "inappropriate to punish the client for the conduct of her attorney, particularly when there is no evidence that the client is aware of the problem").

Notwithstanding Plaintiff's failure to comply with Local Rule 56.1, in the interest of justice, the Court has conducted a thorough review of the record before it, which was submitted

in its entirety by Defendants.[2]  That record confirms the facts as stated in Defendants' 56.1 Statement, which consequently are deemed admitted.  In addition, the Court has considered other evidence in the record, specifically the depositions of Plaintiff Mohr and Officer Baksh, the March 4, 2009 transcript from Mohr's arraignment, a document titled "APS DA Datasheet" and an NYPD lab report.

### B.  Factual Background

The following facts are taken from Defendants' 56.1 Statement and the other evidence described above and are undisputed unless noted.  On March 4, 2009, Mohr stopped by an apartment building on Cabrini Boulevard in New York City to pick up papers that he had left in the car of an individual named Omar. The two men met in the lobby the building.  Upon greeting each other, Mohr and Omar engaged in a multi-step handshake: "first plaintiff and Omar's hands closed around one another and their thumbs gripped each other's hand; next, they opened their hands and grasp[ed] each other's fingers while making the thumb erect and point[ing the] forefinger at the other person." Omar did not return the papers to Mohr, because according to Mohr, Omar forgot to bring them downstairs.  Mohr testified that they only shook hands ("gave a five") in the way they do it on his block.  There is no evidence in the record that either of the men gave anything to the other or that a police officer observed any item pass between the two men's hands.

The Assistant District Attorney later told the arraigning judge that Officer Labate and other officers in an unmarked car observed Mohr "conduct what appeared to be a hand-to-hand sale" with an unapprehended individual.  Defendants also submitted a document with notes titled "APS DA Datasheet," which similarly indicates that Officer Labate and other officers observed

---

[2] Counsel for Plaintiff submitted one exhibit with his opposition—the transcript from Mohr's March 4, 2009 arraignment—which was previously submitted as an exhibit to Defendants' motion.

"what appeared to be a hand to hand drug transaction."  There is no affidavit or testimony in the record from Officer Labate or the other officers who reportedly witnessed Mohr and Omar's handshake.  It is undisputed that Mohr and Omar were visible from the street through the front door of the apartment building when they shook hands.

As Omar ascended the stairs, Plaintiff Mohr saw a black male in a hooded sweatshirt attempt to enter the lobby through the front entrance. The individual at the door placed his hand on a gun held in a holster.  After seeing the man at the door, Mohr fled from the lobby through a door that led to an outdoor area where garbage is collected.  Plaintiff claims, and Defendants do not dispute, that the individual at the door, presumably Officer Labate, was not wearing a uniform, did not show a badge and did not identify himself as a police officer.  Mohr testified that he believed that this individual intended to rob him.

Upon leaving the building, Mohr encountered two more individuals wearing hoodies attempting to enter the gate through which he had planned to exit.  Mohr believed the individuals were also "after him" and ran in the opposite direction, jumping over two or three gates while running through back alleyways.   Mohr emerged onto Cabrini Boulevard, saw another individual in street clothing pursuing him, and quickly reversed direction.  After running several blocks, Mohr stopped because he was exhausted.  At some point, while Mohr ran north, Officer Baksh, who was in a patrol car, identified himself as an NYPD officer and ordered Mohr to stop. Officer Baksh testified that he got out of his car, tackled Mohr and they "fell over each other." According to Mohr's deposition testimony, an NYPD officer slammed Mohr to the ground and began hitting him shortly after he stopped running.  More people, presumably officers, arrived and, according to Mohr, also hit him while he was on the ground.

The officers thereafter handcuffed Mohr and stood him up.  It is undisputed that the officers searched Mohr after he was handcuffed, and discovered a clear bag of creatine powder,

knotted at the top, in Mohr's pocket and $3,084.00 in cash, some of which had fallen out of Mohr's pocket onto the street.  The creatine powder, which was grape-flavored, contained purple specs the size of grains throughout it.  Mohr told the officers repeatedly that the powdery substance was creatine.  According to Mohr's testimony, one officer said, "you think I'm stupid, you want to run," and then struck Mohr in the face with a walkie-talkie.[3]  There is no evidence that the police officers saw purple grains in the white powder at the time of Plaintiff's arrest.  Police officers did not perform a field test on the substance after Plaintiff's arrest.

Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third Degree under N.Y.P.L. § 220.16(1), (12) and arraigned in the New York County Criminal Court on March 4, 2009.  At the arraignment, Mohr's counsel argued that the suspected controlled substance was creatine and that Mohr possessed the money recovered from him for legitimate reasons.  Despite counsel's arguments, the arraigning judge set a bail of a $3,000 bond, $2,000 cash, with a seventy-two hour surety.  Mohr did not make bail and remained incarcerated.

On March 5, 2009, the day after his arrest, a New York City Police Department Police Laboratory Controlled Substance Analysis Report confirmed that the white powder was indeed creatine and that Mohr had not possessed a controlled substance at the time of his arrest.  On or about March 9, 2009, the court dismissed the criminal complaint filed against Plaintiff and he was released from jail.

## II.    Legal Standard for Summary Judgment

The standard for summary judgment is well established.  Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[3] Mohr stated that another police officer scraped his face against a rock wall.  Officer Baksh testified that he did not see anybody hit Mohr, and did not see any "marks" on Mohr's face when Officer Baksh first saw him, but did see marks on his face and that he was bleeding from a scrape when Officer Baksh again saw Mohr at the precinct.

56(a).  The Court must construe the evidence and draw all reasonable inferences in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *In re "Agent Orange" Prod. Liab. Litig.*, 517 F.3d 76, 87 (2d Cir. 2008).  A motion for summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.  *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178-79 (2d Cir. 2008).  Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    False Arrest

Defendants are not entitled to summary judgment on Mohr's claim for false arrest because there are genuine issues of disputed fact as to whether the police officers had probable cause to search Mohr and arrest him for criminal sale of a controlled substance.

### A.  Legal Standard

The Fourth Amendment "includes the right to be free from arrest absent probable cause." *Torraco v. Port Auth. of N.Y. & N.J.*, 615 F.3d 129, 139 (2d Cir. 2010) (internal quotation marks omitted); *see* U.S. CONST. amend. IV.  "'In analyzing § 1983 claims for unconstitutional false arrest, [courts generally look] to the law of the state in which the arrest occurred.'"  *Jaegly v. Couch*, 439 F.3d 149, 151-52 (2d Cir. 2006) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)).  In order to state a claim for false arrest, a plaintiff must show that: (1) the defendant intentionally confined the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise justified. *See Posr v. Doherty*, 944 F.2d 91, 97 (2d Cir. 1991).  Under both New York and federal law, "the existence of probable cause is an absolute defense to a false arrest claim."  *Jaegly*, 439 F.3d at 152.

"'Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *Torraco*, 615 F.3d at 139 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)). "The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (internal quotation mark omitted). In the context of false arrest claims, courts look to the totality of the circumstances and "must consider those facts available to the officer at the time of the arrest and immediately before it, as probable cause does not require absolute certainty." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (emphasis omitted) (citation and internal quotation marks omitted). "'[N]o probable cause exists to arrest where a suspect's actions are too ambiguous to raise more than a generalized suspicion of involvement in criminal activity.'" *Gonzalez*, 728 F.3d at 155 (quoting *United States v. Valentine*, 539 F.3d 88, 94 (2d Cir.2008)).

### B.  Application of Law to Facts

Here Defendants argue that the officers had probable cause to arrest Mohr because (1) Officer Labate observed what he believed to be a hand-to-hand drug transaction, (2) Mohr fled and (3) the officers recovered a bag of white powder and cash from Mohr.

As an initial matter, the probable cause determination for Mohr's arrest can be based only on facts known to Defendants prior to their arrest of Mohr—and Mohr was undeniably arrested by the time he was handcuffed. *See California v. Hodari D.*, 499 U.S. 621, 624 (1991) ("To constitute an arrest, however—the quintessential 'seizure of the person' under our Fourth Amendment jurisprudence—the mere grasping or application of physical force with lawful authority . . . was sufficient."). Facts acquired after the arrest are irrelevant to a determination of

probable cause.  *See, e.g.*, *Gonzalez*, 728 F.3d at 155 ("The inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." (internal quotation mark omitted)); *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) ("A court must consider only those facts available to the officer at the time of the arrest and immediately before it." (internal quotation marks omitted)); *Williams v. City of Rome*, No. 08 Civ. 14, 2009 WL 2156914, at *3 (N.D.N.Y. July 15, 2009) (finding that plaintiff's failure to produce identification when asked for it "is irrelevant for purposes of determining whether there was probable cause to believe plaintiff was committing a crime because the questioning did not occur until after plaintiff was placed in handcuffs"); *Brewton v. City of New York*, 550 F. Supp. 2d 355, 365-66 (E.D.N.Y. 2008).  ("[T]he facts relevant . . . to the probable cause inquiry are those facts known . . . prior to th[e] earliest alleged confinement," that is, before the detective threatened to handcuff the plaintiff if she attempted to leave).  The undisputed evidence on the record establishes that Mohr was arrested and handcuffed before the search that uncovered the bag of white powder and the money.  Consequently, they are irrelevant to the probable cause determination for Plaintiff's unlawful arrest claim.

The question for the Court then is whether the interaction that Officer Labate observed between Mohr and Omar coupled with Mohr's flight created probable cause for his arrest. Defendants argue that the police had probable cause to arrest Mohr, but—in contrast to the present case where there is no evidence that the officers observed Mohr and Omar exchange any item—in the cases relied upon by Defendants, the officers actually observed objects or cash exchanged between suspects.  *See Smith v. City of New York*, No. 04 Civ. 3286, 2010 WL 3397683, at *1,8 (S.D.N.Y. Aug. 27, 2010) (granting defendants summary judgment on false arrest claim in § 1983 suit for damages where officer arrested plaintiff after observing an individual hand "money to plaintiff and in return plaintiff handed an object" to the individual);

8

*United States v. Washington*, No. 02 Cr. 1574, 2003 WL 21250681, at *1 (S.D.N.Y. May 29, 2003) (motion to suppress denied because probable cause to arrest existed where officer observed defendant hand an item "smaller than a tea bag" to another individual in exchange for money ); *Sam v. Brown*, No. 00 Civ. 4170, 2002 WL 31102644, at *3-4 (E.D.N.Y. Sept. 10, 2002) (writ of habeas corpus denied on false arrest claim where officer observed the defendant engage in what appeared to be the sale of drugs and where "the incriminating character of the green bags" was "immediately apparent"); *Hartzog v. Rabideau*, No. 05 Civ. 0554, 2010 WL 2010948, at *9 (W.D.N.Y. May 18, 2010) (denying writ of habeas where officer observed actions that "seemed to indicate that [defendant] was handing something to the man in brown, and the man in brown was handing currency" to defendant); *cf. Pennsylvania v. Dunlap*, 555 U.S. 964, 964 (2008) (Roberts, C.J., dissenting from the denial of a cert. petition) ("[T]he core fact pattern is the same" in cases where police officers had probable cause to arrest suspected drug dealers after observing a hand-to-hand exchange: "experienced police officers observing hand-to-hand exchanges of cash for small, unknown objects in high-crime neighborhoods.").

Here, the evidence in the record indicates only that the two men shook hands as a form of greeting, and not that an officer witnessed any item or cash pass between them.  Notably absent is any direct statement from the officers who observed Mohr's interaction with Omar.  Instead, Defendants rely on a statement by the Assistant District Attorney that Officer Labate observed "what appeared to be a hand-to-hand transaction" between the two men.  Defendant's evidence consists of multiple levels of hearsay with no indicia of reliability—a written transcript contains the DA's statement, which may have been based on notes from an "APS DA Datasheet," which contains, among many handwritten notes, a typed notation that "PO Labate and other POs are in an unmarked car and observe the defendant and an unapprehended individual conduct what appears to be a hand to hand drug transaction."  It is unclear who typed this statement, what the

9

source of their knowledge was, whether it was one of the police officers involved or someone else adding yet another layer of hearsay.  Even if these hearsay statements were somehow admissible at trial, they are not evidence that the officers observed an object or cash pass between Mohr and Omar.  Defendants have failed to establish that Officer Labate or any other officer observed anything more than a handshake, and witnessing a handshake does not give rise to probable cause for arrest.  *See Perez v. Duran*, No. 11 Civ. 5399, 2013 WL 3357166, at *5 (S.D.N.Y. July 3, 2013) (denying summary judgment where "the parties dispute whether an exchange—other than a handshake—occurred at all").

Second, given the circumstances of the present case, Mohr's flight from the apartment complex was insufficient to establish probable cause at the time of his arrest as a matter of law. Although flight alone is generally not sufficient to establish probable cause, an individual's flight "may be considered in conjunction with other attendant circumstances such as time and location, as well as the police officers' knowledge that a crime had been committed, to establish probable cause." *Morgan v. Superintendent*, 88 F. Supp. 2d 312, 317 n. 48 (S.D.N.Y. 2000) (citing *Sibron v. State of New York*, 392 U.S. 40, 66-67 (1968)); *cf. Illinois v. Wardlow*, 528 U.S. 119, 125-26 (2000) (holding that an individual's *unprovoked* flight from an area of expected criminal activity upon observing police may provide reasonable suspicion for an investigatory stop, but not probable cause for arrest) (emphasis added).  The significance of Plaintiff's flight "may be enhanced or diminished by surrounding circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007); *see also Wardlow*, 528 U.S. at 129-35 (Stevens, J., concurring in part and dissenting in part) ("Among some citizens, particularly minorities and those residing in high crime areas, there is also the possibility that the fleeing person is entirely innocent, but, with or without justification, believes that contact with the police can itself be dangerous, apart from any criminal activity associated with the officer's sudden presence.").  Moreover, "when an officer

insufficiently or unclearly identifies his office or his mission," an individual's flight "must be regarded as ambiguous conduct." *Wong Sun v. United States*, 371 U.S. 471, 482 (1963).

Here, it is not disputed that Mohr fled from Omar's apartment building upon observing a non-uniformed man in hoodie with his hand near a firearm attempting to enter the lobby of the apartment building. At his deposition, Mohr testified that Officer Labate did not show a badge or otherwise identify himself as a police officer and that Mohr believed the unidentified individual, and the other unidentified officers who joined the chase, were attempting to rob him. Given these circumstances, it is far from clear that Mohr's flight was "unprovoked." In any event, even if Defendants could argue that Mohr's flight provided reasonable suspicion for a brief investigatory detention, *see, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 17 (1968), it did not, without more, provide grounds for his arrest. Under the totality of the circumstances test, a reasonable jury could conclude that Defendants lacked probable cause to arrest Mohr.

Accordingly, Defendants' motion for summary judgment on the claim of false arrest in violation of § 1983 is denied.

## IV.  Malicious Prosecution

Genuine issues of material fact preclude summary judgment on Plaintiff's malicious prosecution claim.

### A.  Legal Standard

Malicious prosecution claims "vindicate[] the right to 'freedom from unjustifiable litigation.'" *Rothstein v. Carriere*, 373 F.3d 275, 292 (2d Cir. 2004) (citing *Broughton*, 335 N.E.2d at 314). "In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and establish the elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citation omitted). Under New York law, the elements of a

11

malicious prosecution claim are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003). Additionally, Plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000).

### B.  Application of Law to Facts

Defendants challenge only the third and fourth prongs of the malicious prosecution claim: the existence of probable cause and malice.

#### 1.  Probable Cause

Defendants argue that they are entitled to summary judgment because, after discovering the bag of white powder on Mohr, the officers had probable cause to file the criminal complaint against him.  "'The existence of probable cause is a complete defense to a claim of malicious prosecution in New York.'"  *Manganiello v. City of New York*, 612 F.3d at 161-62 (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).  Probable cause "must be evaluated in light of the facts known or believed *at the time the prosecution initiated* rather than at the time of the arrest."  *Gaston v. City of New York*, 851 F. Supp. 2d 780, 793 (S.D.N.Y. 2012) (emphasis added) (internal quotations marks omitted); *see Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999) ("The fruit of the poisonous tree doctrine . . . is inapplicable to civil § 1983 actions.").

Here there are genuine issues of disputed fact as to whether Defendants had probable cause to prosecute Mohr.  First, Mohr testified that his creatine powder contained purple grape-flavored specs throughout, which arguably should have been visible upon inspection.  Second, at the time of Mohr's arrest, he told the officers repeatedly that the substance that they discovered

on him was creatine and not a controlled substance.  While officers are not required to investigate every protestation of innocence, *see, e.g.*, *Panetta*, 460 F.3d at 395-96, this fact is still relevant.  *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) ("'[F]ailure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause.'" (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983))). Third, Plaintiff testified that the officers punched and hit him at the time of his arrest, even prior to discovering the white bag of powder, because they were angry that Plaintiff had fled making a chase necessary.  It is also undisputed that the officers did not perform a field test, although there is no evidence on the record whether a field test would have been feasible or appropriate under the circumstances.

When inferences are drawn in Plaintiff's favor, a jury could conclude that the officers were aware that the white powder likely was creatine, and not a controlled substance, when they initiated the prosecution, and consequently lacked probable cause to prosecute Mohr.

### 2.  Malice

The fourth element of malicious prosecution requires a showing that "the proceeding was instituted with malice." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 131 (2d Cir. 1997). "'[A] lack of probable cause generally creates an inference of malice.'" *Manganiello*, 612 F.3d at 163 (quoting *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003)).  Under New York law, "malice does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Lowth*, 82 F.3d at 573 (quoting *Nardelli v. Stamberg*, 377 N.E.2 975, 976 (N.Y. 1978)).

Here, drawing inferences in Mohr's favor, a reasonable jury could conclude that, knowing the powder recovered from Mohr likely was not a controlled substance, the officers

commenced the proceedings against him for some reason other than to see the ends of justice

served. *See id.* ("Given that [the officer] lacked probable cause to charge [plaintiff], and given

also that . . . [the officer] might have been acting out of anger for what [the plaintiff] had put him

through, we think that enough evidence of malice, as defined by New York, can be inferred to

survive a motion for summary judgment.").

Consequently, summary judgment on Plaintiff's malicious prosecution claim is denied.

### 3. Damages

Defendants argue that Plaintiff should be precluded from seeking damages for his post-

arraignment detention due to the intervening acts of the Assistant District Attorney and the

judge. Specifically Defendants argue that (1) the prosecutor exercised independent judgment in

initiating the prosecution and (2) the arraigning judge made an independent determination in

setting bail and remanding Plaintiff.

"It is well settled that the chain of causation between a police officer's unlawful arrest

and a subsequent conviction and incarceration is broken by the intervening exercise of

independent judgment," at least "in the absence of evidence that the police officer misled or

pressured the official who could be expected to exercise independent judgment." *Townes*, 176

F.3d at 147. Despite the presumption that a prosecutor exercises independent judgment, *see*

*Hartman v. Moore*, 547 U.S. 250, 263 (2006), "'courts have found a triable issue of fact as to the

initiation element where the defendant-officer brought formal charges and had the person

arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony

complaint, or created false information and forwarded it to prosecutors.'" *Alcantara v. City of*

*New York*, 646 F. Supp. 2d 449, 457-58 (S.D.N.Y. 2009) (quoting *Espada v. Schneider*, 522 F.

Supp. 2d 544, 553 (S.D.N.Y. 2007)); *see Cameron v. City of New York*, 598 F.3d 50, 63 (2d Cir.

2010) (noting that "generally in malicious prosecution actions alleging that a police officer

provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior"); *Zahrey v. Coffey*, 221 F.3d 342, 352 (2d Cir. 2000) ("'A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial—none of these decisions will shield a police officer who deliberately supplied misleading information that influenced that decision.'" (quoting *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988))); *cf. Higazy v. Templeton*, 505 F.3d 161, 177 (2d Cir. 2007) ("[E]ven if the intervening decision-maker (such as a prosecutor, grand jury, or judge) is not misled or coerced, it is not readily apparent why the chain of causation should be considered broken where the initial wrongdoer can reasonably foresee that his misconduct will contribute to an 'independent' decision that results in a deprivation of liberty.") (internal quotation marks omitted).

Here, when inferences are drawn in Plaintiff's favor, the evidence is sufficient for a reasonable factfinder to conclude that the police officers misled the Assistant District Attorney and the judge by filing a complaint asserting that they recovered a controlled substance from Mohr at the time of his arrest, when the officers knew that the powder likely was not a controlled substance. The jury could also conclude that the police officers deceived the subsequent decision makers, and that Plaintiff's damages were reasonably foreseeable. Consequently Defendants' motion to limit damages to Plaintiff's pre-arraignment detention is denied.

**V.    Qualified Immunity**

Officers Labate and Baksh are not entitled to summary judgment on their qualified immunity defense for either the false arrest or malicious prosecution claims as a matter of law at this stage. "Under federal law, a police officer is entitled to qualified immunity where '(1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for him to believe that

his actions were lawful at the time of the challenged act.'"  *Jenkins*, 478 F.3d at 87 (quoting

*Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001)).  There is no doubt that the rights to be free

from false arrest and malicious prosecution were clearly established by March 4, 2009.  *See*

*Cook v. Sheldon*, 41 F.3d 73, 78 (2d Cir. 1994) ("It is now far too late in our constitutional

history to deny that a person has a clearly established right not to be arrested without probable

cause."); *Manganiello v. City of New York*, 612 F.3d 149, 164-65 (2d Cir. 2010) ("'[F]reedom

from malicious prosecution is a constitutional right that has long been clearly established.'"

(quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003))).  Therefore, Mohr's false arrest

and malicious prosecution claims turn on whether the officers' probable cause determinations at

the time of arrest and at the initiation of prosecution were objectively reasonable.

      "An officer's determination is objectively reasonable if there was arguable probable

cause . . . that is, if officers of reasonable competence could disagree on whether the probable

cause test was met, [but not if they] would have to agree that the information . . . did not add up

to probable cause."  *Gonzalez*, 728 F.3d at 157 (internal quotation marks omitted).  In other

words, if "on the undisputed facts the officer would be unreasonable in concluding probable

cause existed, or if the officer's reasonableness depends on material issues of fact, then summary

judgment is inappropriate."  *Jenkins*, 478 F.3d at 88.

      The Court cannot determine, at this stage and as a matter of law, that it was objectively

reasonable for the officers to find probable cause to arrest or prosecute Mohr, or that reasonable

officers could disagree about whether or not the probable cause test was met in either instance.

The same factual disputes that preclude summary judgment on the substance of Mohr's claims

for false arrest and malicious prosecution also prevent summary judgment as to qualified

immunity.

## VI.    Claims Against Defendant City of New York

Defendants' motion for summary judgment on Mohr's claims against Defendant City of New York pursuant to 42 U.S.C. § 1983 is granted because there is no evidence on the record to sustain this claim.  The municipality cannot be held responsible under § 1983 based only on a theory of respondeat superior.  *Monell v. Dep't of Soc.l Servs.*, 436 U.S. 658, 694 (1978).  In order to establish municipal liability under § 1983, Plaintiff must show that "the municipality itself cause[d] the constitutional violation at issue."  *Jenkins*, 478 F.3d at 93-94.  "A plaintiff must establish that the violation of his constitutional rights resulted from a municipal custom or policy."  *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995).  If Plaintiff is unable to establish that a municipal policy or practice was the moving force behind the constitutional violation, the municipality cannot be held liable.  *See Monell*, 436 U.S. at 694.

There is no evidence on the record to support a claim that Mohr's rights were violated as a result of municipal policy or practice.  Plaintiff's argument that the City has a supervisory policy of benign neglect is not evidence and is insufficient to defeat summary judgment.  Consequently, the claims against the City of New York are dismissed.

## VII.    Claims against New York City Police Department

The claims against the New York City Police Department also are dismissed.  "It is well settled in this Court that, as a general matter, agencies of New York City are not suable entities in § 1983 actions."  *Nnebe v. Daus*, 644 F.3d 147, 158 n. 6 (2d Cir. 2011); *see* N.Y.C. Admin. Code & Charter Ch. 17 § 396; *Valade v. City of New York*, No. 10 Civ. 2831, 2013 WL 2460186, at *11 (S.D.N.Y. June 6, 2013) ("The law is clear that the New York City Police Department is not a suable entity.").

## VIII.   State Law Claims

Defendants argue that, to the extent that Plaintiff's allegations in the Complaint can be construed to include claims brought under New York state law, they should be dismissed for failure to comply with conditions precedent to suit pursuant to New York General Municipal Law §§ 50-e and 50-i.  Indeed, while Plaintiff argues that he has complied with the relevant requirements, he has not come forward with evidence that he filed a notice of claim in the form required by § 50-e, or within the time required by § 50-i.[4]  Nevertheless, even construing Plaintiff's complaint liberally, the Court concludes that no state law claims are alleged. Consequently, there are no claims to dismiss.

## IX.   Conclusion

For the reasons stated above, Defendants' motion is GRANTED in part to the extent that Plaintiff's claims against the City of New York and the New York City Police Department are dismissed.  Defendants' motion for summary judgment is otherwise DENIED.

The Clerk of Court is directed to close the motion at docket number 29.

SO ORDERED.

Dated: November 12, 2013
         New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that, if Plaintiff had asserted state law claims, the failure to file a notice of claim would preclude those state law claims against the City of New York, but not necessarily against the individual defendants.  *See Matthews v. City of New York*, 889 F. Supp. 2d 418, 448 (E.D.N.Y. 2012) (noting that the "Notice of Claim requirements '[do] not apply to claims asserted against municipal employees in their individual capacities that allege injuries resulting from intentional wrongdoing or recklessness—misconduct for which the City has no obligation to indemnify.'" (quoting *Brenner v. Heavener*, 492 F. Supp. 2d 399, 448 n. 12 (S.D.N.Y.2007))).